## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BRUCE KAATZ,<br>    PLAINTIFF,<br><br>- V -<br><br>KINGSBROOK M.H.C., LLC<br>(d/b/a "KINGSBROOK ESTATES<br>MHC, LLC"),<br>KINGSBROOK MHC-MICHIGAN LLC<br>(d/b/a "KINGSBROOK ESTATES<br>MHC, LLC"),<br>    AND<br>MADELEINE STANFIELD<br>    AND<br>KELLY MAGAR,<br>    AND<br>HEATHER VIEHMAN<br>    DEFENDANTS. | CASE NO.<br><br>HON.<br><br>PLAINTIFF'S COMPLAINT FOR<br>DAMAGES |

| **Plaintiff's Attorney:** | **Defendants' Attorneys:** |
|---|---|
| LEGAL SERVICES OF EASTERN MICHIGAN<br>Steven E. Shelton (P68652)<br>Nikola Lucic (P79706)<br>Counsel for Plaintiffs<br>436 S. Saginaw Street<br>Flint, MI 48502<br>Telephone: 810-991-4820<br>Fax: 810-553-9824<br>Email: SShelton@LSEM-MI.org | |

## <u>COMPLAINT FOR DAMAGES</u>

Plaintiff Bruce Kaatz, through his attorney, Steven Shelton of Legal

Services of Eastern Michigan, states the following for his Complaint for Damages

against Defendants Kingsbrook M.H.C., LLC (doing business as "Kingsbrook Estates MHC, LLC"); Kingsbrook MHC-Michigan, LLC (doing business as "Kingsbrook Estates MHC, LLC"); Madeleine Stanfield; Kelly Magar; and Heather Viehman:

<u>**GENERAL ALLEGATIONS**</u>

### *<u>The Parties</u>*

1. Plaintiff Bruce Kaatz ("Kaatz") is a natural person, and resident of the City of Almont, County of Lapeer, and State of Michigan.

2. Defendant Madeleine Stanfield is a natural person, whose current residential address is unknown.  On information and belief, Defendant Madeleine Stanfield formerly resided or currently resides in the City of Almont, County of Lapeer, and State of Michigan.

3. Defendant Kelly Magar is a natural person, whose current residential address is unknown.  On information and belief, Defendant Kelly Magar formerly resided or currently resides in the City of Almont, County of Lapeer, and State of Michigan.

4. Defendant Heather Viehman is a natural person, whose current residential address is unknown. On information and belief,

Defendant Heather Viehman formerly resided or currently resides in the City of Grand Rapids, County of Kent, and State of Michigan.

5.  Defendant "Kingsbrook M.H.C., LLC" is a Limited Liability Company in the State of Michigan, which has not been in good standing since 2010.

6.  Defendant "Kingsbrook M.H.C., LLC" conducts business as "Kingsbrook Estates MHC, LLC", which is not the name of any registered LLC within the State of Michigan, and for which there is no "DBA" filed.

7.  Defendant "Kingsbrook MHC-Michigan, LLC" was formerly a foreign Limited Liability Company based in Delaware ("Kingsbrook MHC-Delaware, LLC"), but was converted in 2014 to be a Limited Liability Company in the State of Michigan.

8.  Defendant "Kingsbrook MHC-Michigan, LLC" conducts business as "Kingsbrook Estates MHC, LLC", which is not the name of any registered LLC within the State of Michigan, and for which there is no "DBA" filed.

9.  Defendants "Kingsbrook M.H.C., LLC" and "Kingsbrook MHC-Michigan, LLC" (hereinafter collectively, "Kingsbrook Estates") own

and operate a mobile home park located in Almont, Michigan (Lapeer County) (hereinafter, "the mobile home park").

10. Defendants Madeleine Stanfield , Kelly Magar, and Heather Viehman were and/or are employees of Kingsbrook Estates, managing the above-referenced mobile home park.

## *Jurisdiction and Venue*

11. This case involves handicap discrimination in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq. ("FHAA").

12. A "handicapped person" is defined broadly in the FHAA as one who has a physical or mental impairment, which substantially limits such person's major life activities, has a record of having such impairment, or is regarded as having such an impairment, pursuant to Section 802(h), 42 U.S.C. § 3602(h).

13. Discrimination is defined in the FHAA to include refusing "to make reasonable accommodations in rules, policies, practices, or services" when necessary to afford such person with a handicap an "equal opportunity to use and enjoy a dwelling", pursuant to Section 804(f)(3), 42 U.S.C. § 3604(f)(3).

14. The FHAA also makes it unlawful to take adverse action or retaliate against any person for the reason that such person or persons have exercised any rights protected by this FHAA:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section . . . 804 . . . of this title.

Section 818, 42 U.S.C. § 3618.

15. The Court has jurisdiction of this action, pursuant to 42 U.S.C. § 3613, and as a federal question arising under the laws of the United States, as well as pursuant to 28 U.S.C. §§ 1331, 1337 & 1343.

16. This Complaint also arises under the Michigan Persons with Disabilities Civil Rights Act, M.C.L. §§ 37.1501-37.1507 ("PWDCRA").

17. Plaintiff is entitled to the accommodation of his disabilities as a civil right, pursuant to Section 102 of the PWDCRA, MCL 37.1102(1).

18. The PWDCRA defines "disability" as including one or more of the following:

> (i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
>
> . . .

  (D). . . . [S]ubstantially limits 1 or more of that individual's major life activities and is unrelated to the individual's ability to acquire, rent, or maintain property.

  (ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

  (iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

M.C.L. § 37.1103(d).

19. The PWDCRA defines "real estate transaction" as the "sale, exchange, rental, or lease of real property, or an interest therein."

20. "Real property" is defined in the PWDCRA to include, among other things, the "tenement" or "leasehold" of a building or structure.

21. The PWDCRA makes it unlawful to refuse to make reasonable accommodations as necessary to afford persons with a disability the equal opportunity to use the residential property:

  (1) A person shall not do any of the following in connection with a real estate transaction:

  . . .

  (b) Refuse to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person with a disability equal opportunity to use and enjoy residential real property.

M.C.L. § 37.1506a.

22. The PWDCRA also makes it unlawful to take adverse action or retaliate against any person for the reason that such person or persons have exercised any rights protected by this PWDCRA:

> Two or more persons shall not conspire to, or a person shall not:
>
> . . .
>
> (f)    Coerce, intimidate, threaten, or interfere with a person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

M.C.L. § 37.1602(f).

23. The Court has pendent jurisdiction of Plaintiff Bruce Kaatz's PWDCRA claim.

24. There are no administrative prerequisites under the FHAA and the PWDCRA to the filing of this action by Plaintiff.

25. Additionally, Plaintiff's Complaint is timely filed, having been filed within the applicable two- and three-year statutes of limitations periods applicable to claims under the FHAA and the PWDCRA, respectively, following Defendants' most recent violations or continued violations of the FHAA and the PWDCRA.

26. Venue is appropriate, under 28 U.S.C. § 1391, since the substantial part of the events giving rise to this action occurred in this District,

Plaintiff resides in this District, at least two Defendants reside in this District, Defendants conduct business in this District, and the residential rental property that is the subject of this action is located in this District.

## ***Plaintiff's Reasonable Accommodation Request***

27. Plaintiff Bruce Kaatz owns a mobile home that he has occupied at the Kingsbrook Estates mobile home park for approximately 15 years.

28. Part of his rent includes the exclusive use of two adjacent parking spots, located across the street but directly in front of his home's front door.

29. Approximately 12 years ago, Plaintiff began having various problems with his back and legs, and had to undergo several surgeries.

30. As a result of these surgeries, Plaintiff suffered from mobility issues and became disabled.

31. These issues make it difficult for Plaintiff to get in and out of his vehicle, especially when he is bringing in groceries or helping his young son in and out of the car.

32. To make these things easier, Plaintiff began—several years ago—parking so that his vehicle was centered between his two parking spots, giving him extra room to get in and out of his vehicle.

33. Plaintiff parked in this manner for years without incident, problem, or complaint.

34. In September, 2022, Kingsbrook Estates began repaving their streets and informed residents that they would need to park by the office (roughly a quarter mile away) or in the parking spots of vacant sites.

35. Plaintiff notified Defendants at that time that he had a disability that made walking difficult and needed to reserve a parking spot near his home (i.e., one of the parking spots on vacant sites) for this reason.

36. Defendant Madeleine Stanfield, who was the manager at the time, refused to assist Plaintiff.

37. Plaintiff attempted to call Defendant Viehman, the regional manager for Kingsbrook Estates, but was unable to leave a message.

38. Defendant Viehman nonetheless returned Plaintiff's call, leaving a voicemail for Plaintiff.

39. In this voicemail, Defendant Viehman acknowledged that Plaintiff had a disability but told him, in essence, that he needed to "reach out

to the office" to help him find a parking spot, which Plaintiff had
already done without success.

40. Defendant Viehman expressed annoyance because she believed that
Plaintiff had previously complained about the condition of the road
and said Kingsbrook Estates was paying an "exhorbitant amount of
money" to "appease residents like yourself", noting "to be honest,
you are the only person who has had an issue with parking."

41. Defendant Viehman told Plaintiff that in her view, "there is room for
you to comfortably walk from your home to any of the parking areas
that have been offered to you, so no other accommodations are going
to be made."

42. The project was not completed until October 9, 2022.

43. During the approximately three-week period of the construction
(September 19, 2022 through October 9, 2022), Plaintiff was forced
to park primarily at the office and walk approximately one-quarter
mile each way to and from his vehicle using a cane.

44. As a result, Plaintiff experienced excruciating pain in his knees,
requiring that he receive injections.

45. As part of the repaving project, Kingsbrook Estates designated one
parking spot as a "handicap parking" spot.

46. This "handicap parking" spot is at the end of the street, significantly further away from Plaintiff's home than his existing parking spots.

47. On or about October 9, 2022, a Kingsbrook Estates maintenance man (upon information and belief, "Stan Stanfield") had a conversation with Plaintiff about the parking, for the first time indicating a problem with the way that Plaintiff had been parking for approximately 12 years.

48. When Plaintiff asked if the handicap spot was reserved or if anyone could park in it, this employee told Plaintiff that it was not reserved, adding "and you'd better park in your f***ing parking spot and not on both of them!"

49. When Plaintiff pointed out that he had been parking in this way for 12 years, the employee responded, "Well, there weren't lines before, and now there are, so start parking in the f***ing spot!"

50. The employee acted belligerent, and Plaintiff was offended by the vulgar language and behavior in front of his then five-year-old son, who was present for this.

51. On October 25, 2022, Plaintiff received a "violation" for "double parking" because he had parked as previously described.

52. Plaintiff texted Defendants about the violation and the maintenance man's use of vulgar language in front of Plaintiff's child that same day, indicating that he needed an accommodation for his mobility-related disabilities.

## ***Defendants' Denial of the Reasonable Accommodation Request and Retaliation Against Plaintiff***

53. Defendants refused, replying that now that "the lines" are there, it is considered "double parking and that is not allowed".

54. Plaintiff received several more texts, saying that he does not pay for the spots, he rents them, so "the violations will not change".

55. Plaintiff followed up on October 31, 2022 by emailing a request for an accommodation, specifically stating that he needs extra room getting in and out of his vehicle, and asked to be allowed to do this as an accommodation for his disability.

56. To support his reasonable accommodation request, Plaintiff provided Defendants with a copy of an October 28, 2022 letter from his neurologist that stated Plaintiff was being treated for mobility issues related to his "multiple back and neck conditions" and required parking in a "handicap parking spot or . . . a wider parking

spot for his multiple conditions." *October 28, 2022 Letter from Michigan Neurology Associates, P.C.* (Exhibit 1).

57. Defendant Magar responded to Plaintiff via email saying "there is a handicap spot at the end of the sidewalk that you are more than welcome to use" and said they are hoping to get another one next to it soon.

58. As previously noted, the handicap spot is significantly further away from Plaintiff's home than his current parking spots; is not reserved for him and is, therefore, not always available; and Defendants were already on notice that he has mobility-related disabilities.

59. It should also be noted that Kingsbrook Estates does not shovel the sidewalks, so when it snows, the handicap spot is completely inaccessible to Plaintiff.

60. It should further be noted that the handicap spot is not identified by signage; it is only indicated by paint on the pavement, so when it snows, it is not identifiable as a handicap spot.

61. Defendants cited Plaintiff for another "double parking" violation that same day.

62. Defendant Magar stated to Plaintiff that if he received a third violation, that he would be evicted.

63. On November 7, 2022, Plaintiff made another request for an accommodation through counsel (Attorney Steven Shelton of Legal Services of Eastern Michigan), who contacted Defendant Magar.

64. Defendant Magar refused to give the accommodation, merely repeating that Plaintiff could use the handicap spot that is further away from his home and that was all she was willing to do for him. She then referred counsel to Kingsbrook Estates' counsel.

65. Attorney Shelton attempted to contact Defendants' counsel that same day, through both an email and a letter.

66. In both, Attorney Shelton formally requested the accommodation, explained the need for it, and explained why it was not reasonable to require a man with mobility issues to walk further to reach a handicap parking spot.

67. Attorney Shelton received no substantive reply until more than two weeks later, when Attorney Jenni McGuire Scheid replied, asking for more time to "contact my client and discuss the matter further".

68. Attorney Shelton expressed surprise at the need for more time, explaining that this situation had already been going on for a month, that the resolution proposed by Plaintiff literally costs the

Defendants nothing and requires them to take no physical action other than making a few notes in a file.

69. Attorney Shelton also forwarded to Attorney Scheid the letter from Plaintiff's neurologist, as well as an additional letter from Plaintiff's Physician's Assistant ("PA") at Henry Ford Medical Center, which stated specifically that because of his disability, "He is to be allowed to park in the middle of his 2 parking spots ('Double Park'), as he needs extra room to get in and out of his car". *November 1, 2022 Letter from Henry Ford Medical Center* (Exhibit 2)

70. Attorney Scheid refused to allow the accommodation deemed necessary by Plaintiff's PA, repeating only that Plaintiff could use the handicap spot that is located further from his doorway.

71. Attorney Scheid also asserted that "the documentation does not support what he is asking for and we are complying with what the medical professionals are advising."

72. As previously noted, Kingsbrook Estates had acknowledged in September, 2022 that Plaintiff has a disability that makes it difficult for him to walk.

73. Despite the fact that the November 1, 2022 letter from Plaintiff's PA had already specifically stated that he needed to be "allowed to park in

15

the middle of his 2 parking spots ('Double Park')", Plaintiff obtained another letter from Dr. Kenneth Scott on December 7, 2022.

74. The December 7 letter from Dr. Scott specifically stated that "He needs an extra wide parking space so that he can get into and out of his car because of his mobility issues. He also needs a parking space as close as possible to his front door." *December 7, 2022 Letter from Dr. Kenneth Scott* (Exhibit 3).

75. Attorney Shelton forwarded this letter to Attorney Scheid that same day, and receiving no reply, sent it to her again on December 13, 2022, once again demanding that Plaintiff's request for the reasonable accommodation be approved.

76. To date, Attorney Scheid has provided no response.

77. To date, Plaintiff has not been notified that his request has been approved, nor is there any indication that the "violations" have been removed from his file.

78. As previously noted, Plaintiff has been told by Defendants that if he receives a third violation, he will be evicted.

79. As a result of the above, Plaintiff has suffered (among other things) pain, sleeplessness, anxiety, embarrassment, fear, and humiliation

that have manifested as stomach aches, sleeplessness, nightmares, agitation, and nervousness.

80. Plaintiff has also had to undergo additional medical treatments to treat the pain and other conditions resulting from Defendants' failure to accommodate his disability.

## COUNT I
## VIOLATION OF THE FHAA

81. All preceding paragraphs of the Complaint are incorporated and restated as if set forth fully herein.

82. Plaintiff Bruce Kaatz is—and was at all relevant times—handicapped, associated with a handicapped individual, or regarded as having a handicap and entitled to protection under the FHAA.

83. Defendants violated the FHAA by refusing and continuing to refuse to make a reasonable accommodation for Plaintiff in the rules, policies, practices or services concerning his request to have a parking spot closer to his home reserved for him during the street work being done by Defendants.

84. Similarly, Defendants, by continuing to cite Plaintiff for "parking violations" immediately after he requested his accommodation, have

violated the FHAA by retaliating against and attempting to intimidate Plaintiff for exercising his rights under the FHAA.

85. As a result of Defendants' violations of the FHAA, Plaintiff has suffered injuries and damages as set forth above.

## COUNT II
## VIOLATION OF THE PWDCRA

86. All preceding paragraphs of the Complaint are incorporated and restated as if set forth fully herein.

87. Plaintiff Bruce Kaatz is—and was at all relevant times—handicapped, associated with a handicapped individual, or regarded as having a handicap and entitled to protection under the PWDCRA.

88. Defendants violated the PWDCRA by refusing and continuing to refuse to make a reasonable accommodation for Plaintiff in the rules, policies, practices or services concerning his request to have a parking spot closer to his home reserved for him during the street work being done by Defendants. Similarly, Defendants, by continuing to cite Plaintiff for "parking violations" immediately after he requested his accommodation, have violated the FHAA by

retaliating against and attempting to intimidate Plaintiff for exercising his rights under the PWDCRA.

89. As a result of Defendants violations of the PWDCRA, Plaintiff has suffered injuries and damages as set forth above.

**COUNT III**
**VIOLATION OF THE FHAA**

90. All preceding paragraphs of the Complaint are incorporated and restated as if set forth fully herein.

91. Defendants violated the FHAA by refusing and continuing to refuse to make a reasonable accommodation for Plaintiff in the rules, policies, practices or services concerning his request to park in the two parking spots reserved for him as part of his rent, located directly in front of his home, instead of a handicap spot much further away.

92. Similarly, Defendants, by continuing to cite Plaintiff for "parking violations" immediately after he requested his accommodation, have violated the FHAA by retaliating against and attempting to intimidate Plaintiff for exercising his rights under the FHAA.

93. As a result of Defendants' violations of the FHAA, Plaintiff has suffered injuries and damages as set forth above.

### COUNT IV
### VIOLATION OF THE PWDCRA

94. All preceding paragraphs of the Complaint are incorporated and restated as if set forth fully herein.

95. Defendants violated the PWDCRA by refusing and continuing to refuse to make a reasonable accommodation for Plaintiff in the rules, policies, practices or services concerning his request to park in the two parking spots reserved for him as part of his rent, located directly in front of his home, instead of a handicap spot much further away.

96. Similarly, Defendants, by continuing to cite Plaintiff for "parking violations" immediately after he requested his accommodation, have violated the FHAA by retaliating against and attempting to intimidate Plaintiff for exercising his rights under the PWDCRA.

97. As a result of Defendants violations of the PWDCRA, Plaintiff has suffered injuries and damages as set forth above.

WHEREFORE, for all of the above reasons, Plaintiff Bruce Kaatz respectfully requests that the Court grant the following relief against Defendants:

(A)     Temporarily, preliminarily and permanently enjoin Defendants, and all officers, directors, employees, attorneys, agents, and assigns of Defendants, from any other acts or practices of handicap discrimination against other occupants or guests in the ownership, operation and management of their rental properties;

(B)     Award actual and compensatory damages to compensate Plaintiff for economic losses and damages, personal injuries, pain and suffering, and noneconomic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by the Defendants' violations of the FHAA and PWDCRA, in an amount to be proven at trial;

(C)     Grant Plaintiff an award of punitive and/or exemplary damages under the FHAA as a result of Defendants' deliberate, intentional, willful and flagrant handicap discrimination, in an amount that reflects the dual purposes of punishment and deterrence;

(D)     Grant Plaintiff an award of reasonable attorney fees, costs and interest incurred in bringing this action;

(E)     Grant Plaintiff pre-judgment and post-judgment interest on all awards rendered against Defendants; and

(F)     Grant such other and additional relief that the Court finds just and appropriate under the circumstances.

Respectfully submitted,

LEGAL SERVICES OF EASTERN MICHIGAN
Counsel for Plaintiffs

By: */s/ Steven Shelton* (P68652)
436 S. Saginaw Street
Flint, MI 48502
810-991-4820
Fax: 810-991-4820
Email: SShelton@LSEM-MI.org

Dated:  March 14, 2023