# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| BRUCE KAATZ,<br>    PLAINTIFF,<br><br>- V -<br><br>KINGSBROOK M.H.C., LLC<br>(d/b/a "KINGSBROOK ESTATES<br>MHC, LLC"),<br>KINGSBROOK MHC-MICHIGAN LLC<br>(d/b/a "KINGSBROOK ESTATES<br>MHC, LLC"),<br>    AND<br>MADELEINE STANFIELD<br>    AND<br>KELLY MAGAR,<br>    AND<br>HEATHER VIEHMAN<br>    DEFENDANTS. | CASE NO.<br><br>HON.<br><br>PLAINTIFF'S EMERGENCY *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION<br><br>BRIEF IN SUPPORT |

| **Plaintiff's Attorney:** | **Defendants' Attorneys:** |
|---|---|
| LEGAL SERVICES OF EASTERN MICHIGAN<br>Steven E. Shelton (P68652)<br>Nikola Lucic (P79706)<br>Counsel for Plaintiffs<br>436 S. Saginaw Street<br>Flint, MI 48502<br>Telephone: 810-991-4820<br>Fax: 810-553-9824<br>Email: SShelton@LSEM-MI.org | |

## PLAINTIFF'S EMERGENCY *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### EXPEDITED CONSIDERATION REQUESTED

Plaintiff Bruce Kaatz, through his attorney, Steven Shelton of Legal Services of Eastern Michigan, under Fed. R. Civ. P. 65, moves this Court for entry of a Temporary Restraining Order and Preliminary Injunction enjoining Defendants Kingsbrook M.H.C., LLC (D/B/A "Kingsbrook Estates MHC, LLC") and Kingsbrook MHC-Michigan LLC (D/B/A "Kingsbrook Estates MHC, LLC"), and all persons acting on their behalf, from citing Plaintiff Bruce Kaatz for "double parking" in the parking spaces in front of his home, and from otherwise interfering with his ability to enjoy full use of his home, pending entry by the Court of a final judgment in this action.

This motion is based on the following grounds:

1. Concurrent with this Motion, Plaintiff Bruce Kaatz ("Kaatz") has filed a Complaint with this Court alleging violations of the Fair Housing Act ("FHA" or "FHAA") and Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

2. The facts underlying this Complaint include the following:

   a. Plaintiff Kaatz is a person with a disability that makes it difficult and often painful for him to walk;

b.  Plaintiff Kaatz lives in a mobile home at a mobile home community owned/and or operated by Defendants Kingsbrook M.H.C., LLC and Kingsbrook MHC-Michigan LLC (hereinafter, collectively, "Kingsbrook Estates).

c.  Plaintiff Kaatz has two assigned parking spots directly in front of his home, which are included in his monthly lot rent.

d.  Plaintiff Kaatz has, for years, parked in the middle of these two spots to allow extra room for him to get in and out of his vehicle.

e.  Defendants Kingsbrook Estates began citing Plaintiff Kaatz for "double parking" in these spots in October, 2022.

f.  Plaintiff Kaatz has requested multiple times that he be allowed, as a reasonable accommodation under the FHA and PWDCRA, to "double park" in the spots directly in front of his home.

g.  Plaintiff Kaatz has supported this request with no fewer than three letters from his doctors, stating that he needs extra wide parking spots and to park as close as possible to his home.

h.  Defendants Kingsbrook Estates have refused, insisting that he instead park in a handicap spot further away from his home.

i.  This handicap spot is not reserved specifically for Plaintiff Kaatz (so it is not always available), is not marked by any

3

signage other than paint on the pavement (meaning that when it snows, it is not identifiable as a handicap spot), and—as previously noted—is further away from Plaintiff Kaatz's home.

j. Defendants Kingsbrook Estates have cited Plaintiff Kaatz twice for "double parking" violations, and have threatened to evict him if he gets a third violation.

k. The requested accommodation is reasonable, in that it costs Defendants literally nothing and the only action required of them is inaction.

3. Additionally, the handicap spot that Defendants Kingsbrook Estates want Plaintiff Kaatz to use has not been plowed during recent snow storms.

4. To the contrary, the snow was plowed *onto* the handicap parking spot, making it entirely inaccessible to anyone.

5. Plaintiff Kaatz recently fell on the ice at the Kingsbrook Estates mobile home community, exacerbating his injuries and making it even more difficult for him to walk.

6. As a result of the foregoing, Plaintiff Kaatz has suffered, is currently suffering, and will continue to suffer further injury and damages unless he is allowed to park in the parking spots closest to his home,

and to "double park" in those spots to allow for him to get in and out of his vehicle.

7.  ***Expedited consideration is necessary because the harm to Plaintiff is occurring now, and it is irreparable.*** Defendants have threatened to evict Plaintiff from the mobile home park where he lives if he "double parks" so that he can access his vehicle, so he is forced to choose between placing his physical well-being in greater danger due to having to walk further in winter conditions, and potentially losing a place for him and his minor child to live. Accordingly, Plaintiff requests that the Court immediately issue the requested TRO *ex parte* and then set an expedited schedule for briefing on the request for a preliminary injunction, at which time opposing counsel will have the opportunity to respond in full. Time is of the essence.

8.  Under Fed. R. Civ. P. 65(b)(1), the Court may issue a Temporary Restraining Order without notice to the adverse party when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the

movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

9.  Attached to this Motion as Exhibit 4 is an Affidavit, signed by Plaintiff Kaatz, detailing his ongoing injury as a result of Defendants' actions and continued failure to accommodate his reasonable request under the FHA and PWDCRA.[1]

10. Pursuant to Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure and Local Rule 7.1: on March 8, 2023, Counsel notified counsel for Defendants through whom prior negotiations on this matter had taken place that Plaintiff Kaatz was filing the instant suit, requested that counsel accept service of process, and stipulate to the requested relief. Defendants' counsel responded several days later that her firm had "not been retained as of now" so they could not "comment on this further". For that reason, Plaintiff was unable to speak with Defense Counsel as it is unknown who will represent Defendants during this TRO request.

---

[1] The affidavit does not address the exacerbation of Mr. Kaatz's injuries and resulting disabilities, as these events happened quite recently; the attached Affidavit sufficiently documents that he was suffering ongoing injuries sufficient to justify the Temporary Restraining Order even before his recent fall (noting that Mr. Kaatz is disabled, that Defendants refuse to provide the requested accommodation, and he continues to be forced to either face eviction or walk further); and it would take additional time to acquire an updated affidavit due to Mr. Kaatz's injuries.


(B)   Convert such Order to a Preliminary Injunction after a hearing
under Fed. R. Civ. P. 65(a);

(C)   Grant such other and additional relief that the Court finds just and
appropriate under the circumstances.

## BRIEF IN SUPPORT OF PLAINTIFF'S EMERGENCY *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### ISSUE PRESENTED

Whether Defendants' refusal to allow Plaintiff to "double park" (parking in the middle of both of the parking spots directly in front of his home so that he has additional room required for him to get in and out of his vehicle, and so that he can park as close as possible to his home) constitutes a refusal to allow a "reasonable accommodation" under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq. ("FHA" or "FHAA"), thus violating Plaintiff's rights under that statute.

## CONTROLLING AUTHORITY

- Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* ("FHA" or "FHAA")

- Michigan Persons with Disabilities Civil Rights Act, M.C.L.A. § 37.1501 *et seq.* ("PWDCRA")

- 24 CFR 100.204

- *Anderson v City of Blue Ash*, 798 F3d 338 (CA 6, 2015)

- *Connection Distrib. Co. v. Reno*, 154 F.3d 281 (CA 6, 1998)

- *Motor Vehicle Bd. of Cal. v. Orrin W. Fox, et al.*, 434 U.S. 1345 (1977)

- *Reid v. Hood*, No. 1:10CV2842, 2011 U.S. Dist. LEXIS 7631 (N.D. Ohio Jan. 26, 2011)

## INTRODUCTION

Plaintiff Bruce Kaatz, through his attorney, Steven Shelton of Legal Services of Eastern Michigan, under Fed. R. Civ. P. 65, moves this Court for entry of a Temporary Restraining Order and Preliminary Injunction enjoining Defendants Kingsbrook M.H.C., LLC (D/B/A "Kingsbrook Estates MHC, LLC")

10

and Kingsbrook MHC-Michigan, LLC (D/B/A "Kingsbrook Estates MHC, LLC"), and all persons acting on their behalf, from citing Plaintiff Bruce Kaatz for "double parking" in the parking spaces in front of his home, and from otherwise interfering with his ability to enjoy full use of his home, pending entry by the Court of a final judgment in this action.

## STATEMENT OF FACTS

Plaintiff Bruce Kaatz is a 71-year-old man who resides in a mobile home with his minor child. This home is, and has been for approximately 15 years, located at the "Kingsbook Estates Mobile Home Community" (hereinafter "Kingsbrook Estates") in Almont, Michigan. "Kingsbrook Estates" is actually owned and operated by two LLCs: Defendants Kingsbrook M.H.C., LLC and Kingsbrook MHC-Michigan, LLC.[2]

As part of his lease, Plaintiff Kaatz is assigned two reserved parking spots directly in front of his home. Approximately 12 years ago, Plaintiff Kaatz began having various problems with his back and legs, and had to undergo several surgeries. As a result of these surgeries, Plaintiff Kaatz suffers from mobility

---

[2] "Kingsbrook Estates" claims in signage and documents to be operated by "Kingsbrook Estates MHC, LLC". However, no such LLC has ever existed in Michigan, according to the Michigan Department of Licensing and Regulatory Affairs, and both "Kingsbrook M.H.C., LLC" and "Kingsbrook MHC-Michigan, LLC" are indicated as the owners and operators by various property and tax records, among other things.

issues and became disabled. These issues make it difficult for Plaintiff to get in and out of his vehicle, especially when he is bringing in groceries or helping his young son in and out of the car. They also make it excruciatingly painful for him to walk long distances. To make these things easier, Plaintiff Kaatz began parking so that his vehicle was centered between his two parking spots, giving him extra room to get in and out of his vehicle. He parked in this manner for years without incident, problem, or complaint.

In September, 2022, Kingsbrook Estates began repaving their streets and informed residents that they would need to park by the office (roughly a quarter mile away) or in the parking spots of vacant sites. Plaintiff Kaatz notified Defendants at that time that he had a disability that made walking difficult and needed to reserve a parking spot near his home (i.e., one of the parking spots on vacant sites) for this reason. Heather Viehman, the regional manager for Kingsbrook Estates, left a voicemail for Plaintiff acknowledging that Plaintiff Kaatz has a disability but that in her view, "there is room for you to comfortably walk from your home to any of the parking areas that have been offered to you, so no other accommodations are going to be made."

Once the paving project was completed, Kingsbrook Estates designated one parking spot as a "handicap parking" spot. This "handicap parking" spot is at the end of the street, significantly further away from Plaintiff's home than his

existing parking spots. It is only designated by paint on the pavement—there is no other signage to indicate that it is a handicap spot—so when it snows, this spot is unrecognizable as a handicap spot. It is also not reserved for any particular person.

On or about October 9, 2022, a Kingsbrook Estates maintenance man had a conversation with Plaintiff Kaatz about the parking, for the first time indicating a problem with the way that Plaintiff Kaatz had been parking for approximately a dozen years. When Plaintiff Kaatz asked if the handicap spot was reserved or if anyone could park in it, this employee told Plaintiff Kaatz that it was not reserved, adding "and you'd better park in your f***ing parking spot and not on both of them!"

On October 25, 2022, Plaintiff Kaatz received a "violation" for "double parking" because he had parked as previously described. Plaintiff Kaatz texted Defendants about the violation and the maintenance man's use of vulgar language in front of Plaintiff's child that same day, indicating that he needed an accommodation for his mobility-related disabilities.

Defendants refused, replying that now that "the lines" are there, it is considered "double parking and that is not allowed". Plaintiff received several more texts from Defendants' agents thereafter, saying that he does not pay for the spots, he rents them, so "the violations will not change".

13

Plaintiff Kaatz followed up on October 31, 2022 by emailing a request for an accommodation, specifically stating that he needs extra room getting in and out of his vehicle, and asked to be allowed to do this as an accommodation for his disability. To support his reasonable accommodation request, he provided Defendants with a copy of an October 28, 2022 letter from his neurologist that stated Plaintiff Kaatz was being treated for mobility issues related to his "multiple back and neck conditions" and required parking in a "handicap parking spot or . . . a wider parking spot for his multiple conditions." *October 28, 2022 Letter from Michigan Neurology Associates, P.C.* (Exhibit 1).

The Kingsbrook Estates property manager, Defendant Magar, responded to Plaintiff Kaatz via email saying "there is a handicap spot at the end of the sidewalk that you are more than welcome to use" and said they are hoping to get another one next to it soon. Defendants cited Plaintiff for another "double parking" violation that same day. Defendant Magar stated to Plaintiff that if he received a third violation, that he would be evicted.

On November 7, 2022, Plaintiff made another request for an accommodation through counsel (Attorney Steven Shelton of Legal Services of Eastern Michigan). Defendant Magar refused to give the accommodation, merely repeating that Plaintiff could use the handicap spot that is further away

14

from his home and that was all she was willing to do for him. She then referred counsel to Kingsbrook Estates' counsel.

Attorney Shelton attempted to contact Defendants' counsel that same day, through both an email and a letter. In both, Attorney Shelton formally requested the accommodation on behalf of Plaintiff Kaatz, explained the need for it, and explained why it was not reasonable to require a man with mobility issues to walk further to reach a handicap parking spot. No substantive reply was received until more than two weeks later, when Attorney Jenni McGuire Scheid replied, asking for more time to "contact my client and discuss the matter further".

Attorney Shelton expressed surprise at the need for more time, explaining that this situation had already been going on for a month, that the resolution proposed by Plaintiff literally costs the Defendants nothing and requires them to take no physical action other than making a few notes in a file. Attorney Shelton also forwarded to Attorney Scheid the letter from Plaintiff's neurologist, as well as an additional letter from Plaintiff's Physician's Assistant ("PA") at Henry Ford Medical Center, which stated specifically that because of his disability, "He is to be allowed to park in the middle of his 2 parking spots ('Double Park'), as he needs extra room to get in and out of his car". *November 1, 2022 Letter from Henry Ford Medical Center* (Exhibit 2).

Attorney Scheid refused to allow the accommodation deemed necessary by Plaintiff's PA, repeating only that Plaintiff could use the handicap spot that is located further from his doorway. Attorney Scheid also asserted that "the documentation does not support what he is asking for and we are complying with what the medical professionals are advising." As previously noted, Kingsbrook Estates had acknowledged in September, 2022 that Plaintiff has a disability that makes it difficult for him to walk.

Despite the fact that the November 1, 2022 letter from Plaintiff's PA had already specifically stated that he needed to be "allowed to park in the middle of his two parking spots ('Double Park')", Plaintiff obtained *another* letter from Dr. Kenneth Scott on December 7, 2022. The December 7 letter from Dr. Scott specifically stated that "He needs an extra wide parking space so that he can get into and out of his car because of his mobility issues. He also needs a parking space as close as possible to his front door." *December 7, 2022 Letter from Dr. Kenneth Scott* (Exhibit 3).

Attorney Shelton forwarded this letter to Attorney Scheid that same day, and receiving no reply, sent it to her again on December 13, 2022, once again demanding that Plaintiff's request for the reasonable accommodation be approved.

To date, Attorney Scheid has provided no response, nor has Plaintiff Kaatz been notified that his request has been approved, nor have the "violations" been removed from his file. As previously noted, Plaintiff has been told by Defendants that if he receives a third violation, he will be evicted from the park, at considerable expense.

In February, 2023, an ice storm hit Michigan. Plaintiff Kaatz, while attempting to reach his vehicle, fell on the resulting ice. The fall caused new injuries and exacerbated his existing injuries, making it even more difficult, painful, and dangerous for him to walk and get to and from his vehicle.

With the attempts at engaging in an interactive process to reach a resolution obviously going nowhere, and Plaintiff Kaatz now facing even worse hardship, he has filed this instant suit and now seeks a Temporary Restraining Order to prevent Kingsbrook Estates from citing him for "double parking" in the spots closest to his house that are already reserved for him, instead of requiring him to walk further to a handicap spot that is not reserved for his use and that is less accessible to him.

## ARGUMENT

## I.     Standard for Issuing a TRO/Preliminary Injunction

The standard for issuing a Preliminary Injunction is well-established:

> In determining whether or not to grant a preliminary injunction, a district court considers four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest.

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (CA 6, 1998). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Reid v. Hood*, No. 1:10CV2842, 2011 U.S. Dist. LEXIS 7631, at *4-5 (N.D. Ohio Jan. 26, 2011) (*citing Motor Vehicle Bd. of Cal. v. Orrin W. Fox, et al.*, 434 U.S. 1345, 1347 n. 2 (1977)). In the case at bar, the issue is whether to allow Plaintiff Kaatz to continue to park as he has for years—thus maintaining the status quo—or allow the Defendants to force an elderly man with mobility issues to walk further during dangerous winter weather.

## II.   Plaintiff Kaatz Meets the Standard for Injunctive Relief

### A. Success on the Merits

Plaintiff Kaatz is extremely likely to prevail on the merits in this case. Under the FHA and the PWDCRA, it is considered discrimination not to grant a

18

"reasonable accommodation" to a person with a disability so that they may enjoy the full use of their home as any other person would. 42 U.S.C. § 3604(f)(3); M.C.L.A. § 37.1506a; *Anderson v City of Blue Ash*, 798 F3d 338, 361 (CA 6, 2015) (noting that the FHAA "requires reasonable accommodations necessary for a disabled individual to receive the '*same* enjoyment from the property as a non-disabled person would receive,' not merely those accommodations that the disabled individual cannot function without or for which no alternative is available away from the dwelling.") (emphasis in original; internal citations omitted).

In this matter, it is undisputed that Plaintiff Kaatz is disabled: Defendants have already acknowledged that he was, at least as early as the September, 2022 voicemail from Defendant Viehman. It is also undisputed that he has requested a reasonable accommodation, and has provided documentation—not one, but three separate letters from medical providers—stating that he is disabled and has difficulty walking. The only question is whether Kingsbrook Estates is unreasonable in forcing him to walk further to a designated handicap spot instead of allowing him to park in the two spots directly in front of his home, which are already reserved for his use.

Defendants' arguments that Plaintiff Kaatz can use a handicap spot that is further away from his home, rather than violate their rules against "double

parking", is doomed to fail. Not only does logic dictate that it is unreasonable to make an elderly man with painful mobility issues walk farther as an "accommodation", but the regulations promulgated under the FHAA clearly undercut this claim:

(a) It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

(b) The application of this section may be illustrated by the following examples:

Example (1): A blind applicant for rental housing wants live in a dwelling unit with a seeing eye dog. The building has a no pets policy. It is a violation of § 100.204 for the owner or manager of the apartment complex to refuse to permit the applicant to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person will not have an equal opportunity to use and enjoy a dwelling.

Example (2): Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, *when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit. The accommodation therefore is necessary* to afford John an equal opportunity to

> use and enjoy a dwelling. *The accommodation is reasonable because it is feasible and practical under the circumstances.*

24 CFR 100.204 (Lexis Advance through the Mar. 10, 2023 issue of the Federal Register, with the exception of the amendments appearing at 88 FR 14490, 88 FR 14887, and 88 FR 14893) (emphasis added); *see also, Shapiro v Cadman Towers, Inc*, 51 F3d 328, 335 (CA 2, 1995) ("the use and enjoyment of a parking space cannot be considered in isolation from the tenant's ability to use and enjoy her dwelling place, a right specifically protected by the FHAA."). Plaintiff Kaatz's situation is virtually the same as the second example given in the regulations. All he has requested is "reasonable accommodations in rules": to allow him to "double park" in his already reserved, already paid-for parking spots that are the closest to his home. This costs the Defendants nothing, and the only action required of them is inaction. As such, this accommodation is *per se* reasonable and it is a clear violation of the FHAA, PWDCRA, and Mr. Kaatz's rights under both to deny him this accommodation.

### B. *Irreparable Harm to the Plaintiff*

Plaintiff Kaatz is suffering, and will continue to suffer, irreparable harm without the Temporary Restraining Order and Preliminary Injunction. As noted, his disabilities make it difficult and painful for him to walk more than very short distances, and (during the winter months especially) it can be even dangerous for him to do so (as his recent fall aptly demonstrates). He is currently faced with

a choice: walk further at the cost of additional pain, difficulty, and danger; or park as he has been doing and risk being cited yet again and potentially evicted from his home. Waiting for the case to be resolved at trial will prolong by months this stress-inducing dilemma that has already taken a physical, mental, and emotional toll on Plaintiff Kaatz. The Temporary Restraining Order and Preliminary Injunction are necessary immediately to eliminate that ongoing harm.

### C. No Harm to Others

Allowing Plaintiff Kaatz to "double park" in parking spots directly in front of his home—spots that he is already paying to reserve as part of his rent—causes no harm to anyone. Since these spots are already reserved for Plaintiff Kaatz, no one else is giving up a parking space. Nobody else is being forced to walk further to and from their vehicle. It costs the Defendants nothing; they merely have to agree not to cite him for doing so. Again: the only action required of the Defendants is inaction.

### D. Impact of the Injunction on Public Interest

It is hard to see how the issuance of this Temporary Restraining Order and Preliminary Injunction would have any negative impact on public interest. To the extent that it would have any impact, the issuance of the Temporary Restraining Order would potentially serve as a message that the rights of people

with disabilities are to be taken seriously and not merely brushed aside, as Defendants have done.

## CONCLUSION

Plaintiff Kaatz is being placed in a position where he has been—and will continue to be—harmed due to the intransigence of Defendants. Their refusal to grant the slightest accommodation is unreasonable, harmful, and also illegal. When a person with a disability and their medical provider say to a landlord, "This person needs 'X' to enjoy full use of their home", it is not the place of the landlord to second-guess them both and suggest "Y" instead; the individual with the disability and that person's caregivers know what is best for them. Only when the accommodation is unreasonable does the landlord need to offer alternatives, and even then, those alternatives must accomplish the same goal as the requested accommodation. In the instant case, Plaintiff Kaatz's request is the most reasonable of all: to allow him to park as he has done for years. For Defendants, the only action required is inaction. Yet, they refuse.

For the foregoing reasons, Plaintiff Kaatz respectfully requests the Court grant his motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

LEGAL SERVICES OF EASTERN MICHIGAN
Counsel for Plaintiffs

By: */s/ Steven Shelton* (P68652)
436 S. Saginaw Street, Suite 101
Flint, MI 48502
810-991-4820
Fax: 810-991-4820
Dated:  March 14, 2023          Email: SShelton@LSEM-MI.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 14, 2023 I will deliver the foregoing document to the following via U.S. mail:

Ara J. Darakjian
Registered Agent for Kingsbrook MHC – Michigan, LLC
217 Pierce Street, Suite 209
Birmingham, MI 48009

Armen Darakjian
Registered Agent for Kingsbrook MHC, LLC
29333 Northwestern Highway
Southfield, MI 48034

Respectfully submitted,

LEGAL SERVICES OF EASTERN MICHIGAN
Counsel for Plaintiffs

Dated:  March 14, 2023                 By: /s/ *Steven Shelton* (P68652)

25