UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BRUCE KAATZ,<br><br>    Plaintiff,<br><br>v.<br><br>KINGSBROOK M.H.C., LLC, KINGSBROOK MHC-MICHIGAN LLC, MADELEINE STANFIELD, KELLY MAGAR, and HEATHER VIEHMAN,<br><br>    Defendants. | Case No. 23-10604<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER [2]**

Bruce Kaatz lives at Kingsbrook Estates Mobile Home Park with his five-year-old son. (ECF No. 2-4, PageID.60.) The lot he rents includes two reserved parking spaces that are "directly in front of [his] home and next to each other." (*Id.*)

Kaatz is disabled, has limited mobility due to problems with his back and legs, and needs a cane or other mobility device to get around. (ECF No. 2-4, PageID.60; *see also* ECF No. 4, PageID.67 (noting that Kaatz receives Social Security/Disability Benefits).) Kaatz claims his disability makes it "excruciatingly painful for him to walk long distances." (ECF No. 2, PageID.43.) And his disability makes it difficult for him to "get in and out of his vehicle, especially when he is bringing in groceries or helping his young son in and out of the car." (*Id.*; ECF No. 2-4, PageID.60.) So for many years,

Katz "double-parked" in the middle of his two reserved parking spaces to give him sufficient room to maneuver on either side of his vehicle. (ECF No. 2-4, PageID.60.)

Kaatz's double parking was not a problem until October 2022, when a Kingsbrook Estate employee informed him that he could no longer do so. (ECF No. 2-4, PageID.60.) The employee said he should instead park in a handicapped spot at the end of his street. (*Id.*) But that spot is "significantly further away" and is not reserved for Kaatz, so it "would actually make [parking] more difficult[.]" (*Id.*; ECF No. 2, PageID.44.) On the "same day" that this conversation took place, Kaatz was cited for double parking. (ECF No. 2-4, PageID.60.)

In November and December 2022, Kaatz and his attorney made several requests that Kaatz be allowed to double park in his reserved spaces as an accommodation for his disability, and he shared several letters from his medical treaters explaining why such an accommodation was necessary. (ECF No. 2-4, PageID.60–63.) But this got him nowhere. (*Id.*) Instead, Kaatz was again cited for double parking, and Kingsbrook Estates' employees "threatened to evict him if he [received] a third violation." (ECF No. 2, PageID.35.)

To make matters worse, Kaatz says that the handicapped spot has not been plowed during the winter and, in fact, "snow was plowed *onto* the handicap parking spot, making it entirely inaccessible to anyone." (ECF No. 2, PageID.35 (emphasis in original).) And Kaatz "recently fell on the ice" at Kingsbrook Estates, which "exacerbate[ed] his injuries and ma[de] it even more difficult for him to walk." (*Id.*)

2

So Kaatz brought suit under the Fair Housing Amendments Act and Michigan's Persons with Disabilities Civil Rights Act. (*See generally* ECF No. 1.) And he sought an ex parte temporary restraining order. (ECF No. 2.) Specifically, Kaatz asks the Court to "enjoin[] Defendants, and all officers, directors, employees, attorneys, agents, and assigns of Defendants, from citing Plaintiff Bruce Kaatz for 'double parking' in the parking spaces in front of his home, and from otherwise interfering with his ability to enjoy full use of his home, pending entry by the Court of a final judgment in this action." (ECF No. 2, PageID.38.)

For the reasons that follow, the Court will grant in part the ex parte motion for temporary restraining order.

## I.

Federal Rule of Civil Procedure 65 provides that a Court may issue a temporary restraining order without notice to the adverse party only if the movant sets forth "specific facts in an affidavit . . . clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

If the procedural requirements are satisfied, the Court can consider the merits of the motion. "[T]he purpose of a [temporary restraining order] under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter*

3

*& Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). In determining whether to grant such relief, the Court must weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief." *A&W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

Kaatz clears the first step. He provided the Court with an affidavit explaining the irreparable harm he will suffer without a temporary restraining order. (*See* ECF No. 2-4 (explaining the burden of "having to walk further in [his] condition during winter in Michigan" or potentially facing eviction).) And his lawyer explained that he tried to serve the Kingsbrook attorneys he had previously negotiated with, but they were unable to accept service of process. (ECF No. 2, PageID.37.)

And the Court finds that the factors tip in favor of granting Kaatz a temporary restraining order on the merits.

For starters, Kaatz has shown a likelihood of success on the merits. The Fair Housing Amendments Act of 1988 "makes it unlawful to 'discriminate against any person . . . in the provision of services or facilities in connection with a dwelling because of a disability of . . . a person residing in . . . that dwelling." *See Kooman v. Boulder Bluff Condos.*, 833 F. App'x 623, 626 (6th Cir. 2020) (cleaned up) (quoting 42 U.S.C. § 3604(f)). As Kaatz points out, FHAA regulations use the following example to illustrate a violation of the law: "John applies for housing [in an apartment complex]. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of [the complex] to refuse to make this accommodation." (ECF No. 2, PageID.49 (citing 24 C.F.R. § 100.204).) So at least on these facts, the same result seems likely here.

And Katz has shown an irreparable injury. "An injury is irreparable if it is not fully compensable by monetary damages[.]" *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 852 (6th Cir. 2017). The movant must show that the irreparable harm is "likely," not "merely speculative." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20–22, (2008). And courts have found that "[w]hen housing discrimination is shown, 'it is reasonable to presume that irreparable injury flows from the discrimination.'" *Chapp v. Bowman*, 750 F. Supp. 274, 277 (W.D. Mich. 1990) (quotation omitted).

Here, Kaatz says that "his disabilities make it difficult and painful for him to walk more than very short distances, and (during the winter months especially) it can be . . . dangerous for him to do so (as his recent fall aptly demonstrates)." (ECF No. 2, PageID.52.) So Kaatz is forced to make a difficult choice: "walk further at the cost of additional pain . . . and danger [of falling]; or park as he has been doing and risk . . . [being] evicted from his home." (*Id.*). Either would be irreparable. *See M.R. v. Dreyfus*, 697 F.3d 706, 727 (9th Cir. 2012) (considering the exacerbation of physical disabilities to be an irreparable harm); *Watkins v. Greene Metro. Hous. Auth.*, 397 F. Supp. 3d 1103, 1109 (S.D. Ohio 2019) ("A loss of housing constitutes an irreparable harm."). Moreover, as mentioned, "because [Kaatz] has presented evidence to support [his] claims of housing discrimination, 'it is reasonable to presume that irreparable injury flows from the discrimination.'" *Dinter v. Miremami*, --- F.Supp.3d ----, No. 6:22-CV-157, 2022 WL 4534446, at *4 (E.D. Ky. Sept. 13, 2022) (citing *Chapp*, 750 F. Supp. at 277 277 (W.D. Mich. 1990)). So this result is "consistent with the fair housing law, which specifically authorizes temporary injunctive relief upon a showing that a violation has or is about to occur." *Chapp*, 750 F. Supp. at 277 (citing 42 U.S.C. § 3613(c)(1)).

In addition, the Court finds that any potential harm to Kaatz significantly outweighs the potential harms to Defendants. As Kaatz points out, he pays for his two reserved spaces, no one else is being denied parking, and there appears to be no cost of compliance to the Defendants. (ECF No. 2, PageID.53.) "[T]he only action required of the Defendants is inaction." (*Id.*)

And finally, the public interest favors granting the temporary restraining order. When passing the Fair Housing Act, Congress provided that "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. *See also Dinter*, 2022 WL 4534446, at *5 (collecting cases).

The Court finds that each factor weighs in favor of the temporary restraining order.

However, the Court finds that Kaatz's requested relief is somewhat overbroad, and the Court sees no need to enjoin the Defendants, ex parte, "from otherwise interfering with his ability to enjoy full use of his home" at this time. (*See* ECF No. 2, PageID.39.)

In addition, because Kaatz is proceeding *in forma pauperis*, the Court will not require him to post a bond. *See Moltan Co. v. Eagle-Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (finding that district courts possess discretion over whether to require the posting of security under Federal Rule of Civil Procedure 65(c)).

## II.

Accordingly, Kaatz's motion for temporary restraining order is GRANTED IN PART as follows:

It is ORDERED that Defendants Kingsbrook M.H.C., LLC, Kingsbrook MHC-Michigan LLC, and their agents are temporarily enjoined from citing Kaatz for "double parking" in the reserved parking spaces in front of his home.

7

In addition, Kaatz is ORDERED to (1) immediately serve the complaint, summons, motion for temporary restraining order, and this order on the Defendants and (2) notify the Court as soon as service has been executed. The Court will then schedule a telephonic status conference at the earliest possible time to discuss further proceedings.

This Order shall remain in effect until the parties can be heard on Kaatz's motion for preliminary injunction or upon further notice, but not to exceed 14 days unless the Court extends the time for good cause.

IT IS SO ORDERED this 15th day of March, 2023 at 8:20 a.m.

Dated: March 15, 2023

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE